FILED'08 MAR 28 08:29USDC-ORP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHRYN TERHUNE COTTON,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 06-6324-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

        Plaintiff Kathryn Cotton seeks judicial review of a final decision denying her application for disability insurance benefits. Plaintiff alleges that she became disabled on March 31, 2001, as a result of various physical and mental disorders, including hearing loss, diabetes, chronic fatigue syndrome, fibromyalgia and a personality disorder. She applied for disability benefits on January 25, 2002. Her application was denied initially and upon reconsideration. A hearing, with plaintiff represented by counsel, was held before an Administrative Law Judge (ALJ) on

1 - OPINION AND ORDER

September 2, 2004. Plaintiff and her husband presented testimony at that hearing. The hearing was continued to allow time for collecting additional evidence. A second hearing was held on February 16, 2005. At the second hearing, the ALJ heard testimony from Robert Davis, Ph.D., and vocational expert Kay Hartgrave. On July 26, 2005, the ALJ issued a decision concluding that plaintiff was not entitled to benefits. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff subsequently sought judicial review.[1]

## I. LEGAL STANDARDS

### 1. Five-Step Disability Analysis

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If the claimant is so engaged, disability benefits are denied.

Otherwise, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. §

---

[1] Plaintiff also filed a claim for disability benefits in 1999. A different ALJ issued a decision denying benefits in 2001. Plaintiff filed a complaint with this court, which was dismissed with prejudice for lack of prosecution on September 16, 2002.

404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If the claimant is severely impaired, the Commissioner proceeds to a third step, and determines whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. However, in the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for

purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

2.     **Quantum of Proof**

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## II.  DISCUSSION

Plaintiff's extensive medical history is discussed at length in the ALJ's decision and in the briefs. At the time of her hearing, plaintiff was a 45-year-old woman with an associates degree. Her prior work experience includes work as a van driver, an administrative clerk and as an office clerk.

### 1.  ALJ's Findings

At step one of the five-step analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. Transcript of Record (hereinafter "Tr.") 31, 42.

At step two, the ALJ found that plaintiff had the severe physical and mental impairments of diabetes, borderline histrionic personality disorder and hearing loss. Tr. 31, 42.

At step three, the ALJ found plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 31, 42.

At step four, the ALJ found that plaintiff had "the residual functional capacity for work in which she sits, stands, or walks for six hours in an eight-hour day, and lifts 20 pounds occasionally and 10 pounds frequently; she should avoid concentrations of respiratory irritants; she should avoid excessive background noise, have no requirement for fine hearing discrimination, and avoid work where good hearing would be necessary to avoid work hazards; she should not work with the general public or have close interaction with co-workers; and she should avoid fast-paced work." Tr. 32. Based on this residual functional capacity evaluation, the ALJ concluded that plaintiff was still able to perform her past relevant work as an office clerk. Tr. 40, 42. The ALJ made no step five determination.

2.  **Analysis**

Plaintiff alleges that ALJ improperly rejected the opinions of examining and treating physicians and improperly rejected testimony from plaintiff and her husband. Finally, she alleges that the ALJ erred by not finding her fibromyalgia a severe impairment.

a.  **Medical Opinions**

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings. *Id.* at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

Here, the ALJ's rejection of much of the medical and lay testimony was based on the expert opinion and testimony of Davis at the hearing. His opinion was "that the record supported a diagnosis of histrionic personality disorder." Tr. 37. The ALJ noted that this

6 - OPINION AND ORDER

disorder results in plaintiff "feeling compelled to advertise her condition, and therefore as part of her medical symptomatology itself, she would be expected to make statements that would exceed actual limitations." Tr. 38. Based on this diagnosis and inconsistencies in the record, the ALJ inferred that plaintiff had exaggerated her subjective symptoms when being treated by her physicians, and that the opinions of those treating physicians must be discounted. Plaintiff's histrionic disorder, and "the behavior pattern, in which she 'advertised' her condition, was not volitional." Tr. 37. Thus, the any pattern of deception or embellishment by plaintiff was not malingering, but was a symptom of her psychological malady.

Specifically, the ALJ rejected the opinion of treating psychologist Dr. Nicholas Telew, who opined in March 2002 that plaintiff was "unable to work due to her personality disorder." Tr. 273. The ALJ quoted Dr. Telew as having "primarily assessed the claimant as having 'no psychiatric disability,'" Tr. 41, a statement that is facially inconsistent with the diagnosis of disability. This court was unable to locate this statement in the portion of the record cited by the ALJ. However, Dr. Telew's treatment notes from January 2000 to August 2004 do appear inconsistent with a diagnosis of disability. Tr. 569-87.

The ALJ also rejected the diagnoses of treating physician Dr. James Morris, a pain specialist, and psychologist Ron Lechnyr, Ph.D. Tr. 40. Both Dr. Morris and Lechnyr found that plaintiff was disabled. However, those diagnoses were based entirely on self-reporting, and the record does not show that they were aware that she was embellishing her symptoms. Dr. Morris noted that all of his conclusions, other than the tender point testing for fibromyalgia were based on subjective reporting by plaintiff. Further, plaintiff's reports to Dr. Morris and Lechnyr were inconsistent with contemporaneous reports to other care providers, which showed that her daily

7 - OPINION AND ORDER

activities were significantly more varied than she reported to them. Tr. 167-68, 434 (using computer daily); Tr. 315 (walking six blocks four times a week); Tr. 434 (editing web pages); Tr. 439 (can walk a mile on a good day). The record supports the ALJ's conclusion that the opinions of Dr. Morris and Lechnyr should be discounted.

### b. Credibility

Plaintiff also asserts that the ALJ erred by discounting her and her husband's testimony. If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). An ALJ may consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), (reaffirmed in *Bunnell*), to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only after offering specific, clear and convincing reasons for doing so. *See*

*Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged . . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407. Second, he or she must show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*. 80 F.3d at 1284; 20 C.F.R. § 404.1529(c)(3).

Here, per Davis's diagnosis, the plaintiff's histrionic personality disorder itself leads to the embellishment of alleged symptoms and descriptions of diminished physical capacity. Such testimony is inherently unreliable. As noted above, the levels of activity reported by plaintiff to different medical service providers were inconsistent, bolstering Davis's diagnosis. Further, the ALJ's own observations of the plaintiff at the hearing suggest, for instance, that she was embellishing her claims of hearing difficulties. Tr. 678. The court finds that the ALJ's rejection of plaintiff's testimony was supported by clear and convincing reasons. Similarly, to the extent that the ALJ rejected testimony from plaintiff's husband that was based on plaintiff's reporting, it was appropriately discounted. Tr. 41. However, any portions of her husband's testimony that

were based on his observations are not properly rejected merely due to plaintiff's unreliability. *See Dodrill*, 12 F.3d at 918.

      c.     **Fibromyalgia**

Plaintiff asserts that the ALJ improperly deemed her fibromyalgia to not be a severe ailment. The ALJ reached this conclusion by discounting testimony from rheumatologist Dr. William Maier because he had seen plaintiff only once at the time of his diagnosis, and it was based entirely on self-reporting. Tr. 40. For the reasons stated above, there are serious questions about the accuracy of plaintiff's self-reported symptoms and limitations. However, even if the ALJ improperly concluded that plaintiff's fibromyalgia was not severe, the limitations imposed by that condition were taken into account in the residual functional capacity evaluation. The ALJ adopted a light work limitation for plaintiff, the same limitation recommended by two different state medical consultants who treated fibromyalgia as the primary diagnosis. Tr. 307-11, 431-41. Accordingly, any error in assessing the severity of plaintiff's fibromyalgia was harmless.

## III. CONCLUSION

Based on the foregoing, this court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this 28 day of March, 2008.

                /s/ Ancer L. Haggerty
                Ancer L. Haggerty
                United States District Judge